## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | |
|---|---|
| **THE BANK OF NOVA SCOTIA,** )<br>)<br>**Plaintiff,** )<br>**v.** )<br>)<br>**NAJI ABDALLAH a/k/a NAJI A. ABDALLAH** )<br>**a/k/a NAJEH ABDALLAH, ISSA ABDALLAH** )<br>**a/k/a ISSA A. ABDALLAH,** )<br>**DEPARTMENT OF TREASURY-INTERNAL** )<br>**REVENUE SERVICE,** )<br>**VALERIE SHEPPARD HANKINS AND** )<br>**ALFRED F. HANKINS, JR.,** )<br>)<br>**Defendants,** )<br>)<br>**VALERIE SHEPPARD HANKINS and** )<br>**ALFRED HANKINS,** )<br>)<br>**Cross-Claimants,** )<br>)<br>**v.** )<br>)<br>**NAJI ABDALLAH a/k/a NAJI A. ABDALLAH,** )<br>)<br>**Defendant.** )<br>_____) | **Civil Action No. 2010-102** |

**Attorneys:**
**Matthew J. Duensing, Esq.,**
St. Thomas, U.S.V.I.
    *For Plaintiff Bank of Nova Scotia*

**Angela Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Internal Revenue Service*

**Lydia L. Moolenaar, Esq.,**
**Yohana M. Manning, Esq.,**
St. Croix, U.S.V.I.
    *For Defendants and Cross-Claimants*
    *Valerie Sheppard Hankins and Alfred Hankins*

**MEMORANDUM OPINION**

**Lewis, District Judge**

THIS MATTER comes before the Court on Plaintiff Bank of Nova Scotia's "Renewed Motion for Default Judgment and to Clarify and Correct Factual Record," filed on May 9, 2012. (Dkt. No. 65). By this Motion, the Bank of Nova Scotia (the "Bank") has responded to the Court's Order dated March 30, 2012 which denied without prejudice Plaintiff's first motion for default judgment against Defendants Naji Abdallah and Issa Abdallah ("the Abdallahs"), and directed Plaintiff to either amend its Complaint or re-file its Motion for Default Judgment, supplying additional evidence to adequately support the issue of damages. (Dkt. No. 62). For the reasons discussed below, the Court will deny, without prejudice, the Bank's Renewed Motion for Default Judgment against the Abdallahs.

## I. BACKGROUND

On November 2, 2010, the Bank filed a Complaint against the Abdallahs, the Internal Revenue Service ("IRS"), Valerie Sheppard Hankins, Alfred F. Hankins, Jr., Peabody Place Centre GRP, and Pivar Real Estate.[1] (Dkt. No. 1). The Complaint alleged that the Abdallahs breached a September 2, 1993 Note and Mortgage regarding property ("the Property") described as:

> Plot 24 of Parcel 3 Estate Orange Grove
> Company Quarter
> St. Croix, Virgin Islands
> Consisting of 0.296 U.S. Acre, more or less,
> As more fully shown and described on Public Works
> Department Drawing No. 1178 dated January, 1962

---

[1] The Bank of Nova Scotia voluntarily dismissed Peabody Place Centre GRP and Pivar Real Estate on September 27, 2011, and October 27, 2011, respectively. (*See* Dkt. Nos. 48 and 49).

2

*Id.* The Complaint further alleged that Defendant Naji Abdallah signed the Note; that both Issa and Naji Abdallah signed the Mortgage; that Naji Abdallah failed to pay on the Note; and that the Abdallahs had defaulted on the Mortgage. *Id.* at ¶¶ 9-12; *see also* Dkt. Nos. 41-2 & 41-3. The Bank sought foreclosure of the Property and damages from the Abdallahs. *Id.* at ¶¶ 13-14. Although they were served with the Summons and Complaint, the Abdallahs did not answer the Complaint or otherwise appear in this action. On April 14, 2011, the Bank filed a "Request for Entry of Default" against the Abdallahs; the Clerk of the Court entered default against them on the same day. (Dkt. Nos. 30, 35).

On June 14, 2011, the Bank filed a Motion for Default and Summary Judgment, seeking: (1) a default judgment on the debt and foreclosure causes of action against Naji Abdallah for the entire amount due under the Note and Mortgage, plus expenses, interest, and attorney's fees; (2) default judgment on the foreclosure cause of action against Issa Abdallah; and (3) summary judgment against the IRS and the Hankins as junior lienholders. (Dkt. No. 40). The Hankins filed an Opposition to the Motion. (Dkt. No. 46 at 3). On November 18, 2011, the Bank, the IRS, and the Hankins filed a "Stipulation as to the First Priority Status of the Mortgage of Bank of Nova Scotia and the Relative Priority of the Junior Lien Defendants," wherein they stipulated that the Bank had a first priority lien on the Property, the IRS had a second priority lien, and the Hankins had a third priority lien. (Dkt. No. 55).

In its March 30, 2012 Memorandum Opinion, the Court awarded the Bank summary judgment against the IRS and the Hankins, establishing the priority of the liens. (Dkt. No. 63 at 5). The Court denied, without prejudice, the Bank's Motion for Default Judgment against the Abdallahs, finding that the Bank's submissions in support of the amount of damages due was deficient because the figures offered were inconsistent. The Court pointed out that the Complaint

3

set forth that $78,597.55 represented "the entire unpaid principal sum with all accrued interest and late charges due and payable" as of October 21, 2010, and that interest accrued "at the rate of $12.55 per diem until the date of judgment." (Dkt. No. 1 at ¶ 13). However, in its Statement of Undisputed Material Facts, the Bank stated that, as of May 23, 2011, "[t]he entire unpaid principal sum with all accrued interest and late charges due and payable is . . . $96,838.45 . . . comprised of $77,990.89 in principal, $17,869.44 in interest, and $978.12 in late fees with interest continuing to accrue thereafter at the rate of $14.65 per diem." (Dkt. No. 41 at ¶ 10). The Bank also provided the Affidavit of Daniel Rogers, a Virgin Islands Bank Manager, who stated that "Defendant Naji Abdallah . . . is indebted to the Bank in the total amount of $83,119.76 as of May 27, 2011, comprised of $77,990.89 in principal, $4,150.75 in interest, and $978.12 in late fees, with interest continuing to accrue thereafter at the rate of $11.25 per diem." (Dkt. No. 41-4 at ¶ 6) (emphasis in original). The Court pointed out the inconsistencies in the amount of damages set forth in the Rogers Affidavit, the Statement of Undisputed Facts, and the Complaint, and expressed concern that the Bank had provided no explanation of why its damages calculations differed so significantly from one another. (Dkt. No. 63 at 6-7).

The Bank also provided a "Supplemental Affidavit of Hugh Brown" on December 5, 2011 in support of its Motion for Default Judgment. This Affidavit provided yet another set of damages figures. Mr. Brown, a Bank Manager, stated that, as of December 5, 2011, "Defendant Naji Abdallah is indebted to the Bank in the total amount of $111,435.89 . . . comprised of $77,990.89 in principal, $6,039.61 in interest, *$25,599.65 in add-on charge, $827.62 in add-on interest,* and $978.12 in late fees, with interest continuing to accrue thereafter at the rate of *$16.54 per diem.*" (Dkt. No. 58-1 at ¶ 6) (emphasis added). Mr. Brown did not explain what constituted the $25,599.65 in "add-on charge" and $827.62 in "add-on interest"; why the Bank

4

was entitled to the "add-on" charge; and why the *per diem* interest rate differed from the three other *per diem* rates. Because the Bank's damage calculations were "confusing, inconsistent, and unsupported by record evidence," the Court ruled that the Bank had "failed to adequately support its damages request" and denied the Motion for Default Judgment against the Abdallahs without prejudice. (Dkt. No. 63 at 7). The Court permitted the Bank to "amend its Complaint and/or refile the motion with additional evidence addressing the damages issues . . ." describing "with particularity, the specific damages sought, the manner in which such damages are calculated, and the legal and factual grounds for those damages," together with supporting evidence. *Id.* at 8, 9.

On May 9, 2012, the Bank filed the instant "Renewed Motion for Default Judgment and to Clarify and Correct Factual Record" (the "Renewed Motion"). (Dkt. No. 65). The Bank explained that the "add-on" charge included "property appraisal valuation and legal costs expended by Plaintiff," and that, "[u]nder the express terms of the mortgage these amounts become additional principal due on the loan." (Dkt. No. 65 at 3). The Bank also stated that the varying per diem interest rates were "a direct function of total principal balance; any increase in the principal balance[] necessarily produces a resultant increase in the per diem interest due." *Id.*

Attached to the Renewed Motion was another affidavit by Mr. Brown regarding the amounts due. (Dkt. No. 65-3). Mr. Brown stated that the Abdallahs were indebted to the Bank in the total amount of $123,526.58 as of May 8, 2012. *Id.* This figure was comprised of $77,990.89 in principal; $7,664.38 in interest; $35,251.15 in add-on charge; $1,642.04 in add-on interest; and $978.12 in late fees, with interest accruing at $18.08 per diem. *Id.* An e-mail from Karen Lall, Special Recoveries Adjustor at the Bank, to Sandra Laplace (whose position was unidentified), which contained information on the Abdallah account, (Dkt. No. 65-4), supported the damages figures that Mr. Brown cited in his affidavit. *Id.*

5

On September 4, 2012, the Court issued an Order setting a hearing on the Renewed Motion. (Dkt. No. 67). The Order directed the Bank's counsel to be prepared to substantiate and discuss at the hearing: (1) the damages sought in the Renewed Motion, particularly the $35,251.15 in add-on charge, $1,642.04 in add-on interest, and the $18.08 per diem charge; and (2) how, under the express terms of the Mortgage, those amounts become additional principal due on the loan. (Dkt. No. 67).

At the September 11, 2012 hearing, the Bank's counsel, Matthew J. Duensing, Esq., submitted to the Court, for the first time, a loan history and loan payout information on the Abdallah account, as well as a Memorandum of Costs from his law firm that updated the amount of attorney's fees ($36,319.00) and costs ($1,963.81) sought in this matter. These documents were later filed with the Court. (Dkt. Nos. 71, 73).

In response to the Court's query concerning how the add-on charge and add-on interest became additional principal due under the loan, the Bank's counsel explained that the Note and Mortgage contained language that permitted the Bank to include those charges in the principal. He pointed to a sentence in the Note that provided: "If suit is brought to collect [on] this Note, the Note holder shall be entitled to collect all reasonable costs and expenses of suit, including, but not limited to, reasonable attorney's fees." (Dkt. No. 65-1).  The Bank's counsel also pointed to three paragraphs in the Mortgage:

> TO SECURE to Lender (a) the repayment of the indebtedness evidenced by the Note, with interest thereon, the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage, and the performance of the covenants and agreements of Borrower herein contained, and (b) the repayment of any future advances, does hereby mortgage, grant and convey to Lender the following described [P]roperty . . .

(Dkt. No. 65-2 at 1).

> 18. Acceleration Remedies. Except as provided in paragraph 17 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this mortgage, including covenants to pay when due any sums secured by this mortgage, all of the sums secured by this mortgage shall be immediately due and payable, without notice at the option of Lender and Lender may foreclose this mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all costs and expenses of foreclosure, including but not limited to reasonable attorney's fees, costs of suit and costs of documentary evidence, abstracts and title reports.

(Dkt. No. 65-2 at 4).

> 20. Future Advances. Upon request by Borrower, Lender, at Lender's option prior to discharge of this Mortgage, may make Future Advances to Borrower. Such Future Advances, with interest thereon, shall be secured by this Mortgage when evidenced by promissory notes stating that said notes are secured hereby.

(Dkt. No. 65-2 at 4). During the colloquy, the Bank's counsel conceded that the language of the Mortgage, drafted in 1993, was not as "clear" as current mortgages in permitting the Bank to fold the add-on charge and interest into the principal, but maintained that the text above provided the necessary support for that position.

In response to the Court's inquiry regarding the amount of attorney's fees sought in this case, the Bank's counsel responded that "a lot of time" had been required to resolve the claims of the junior lienholders on the Property. He further stated that underlying this litigation was the fraudulent conveyance of the Property by the Abdallahs, which the Bank had attempted to resolve.

## II. APPLICABLE LEGAL PRINCIPLES

In a motion for entry of default judgment, the Court accepts as true any facts contained in the pleadings regarding liability. Fed. R. Civ. P. 8(b)(6). Legal conclusions, however, are not deemed admitted, nor are the extent and amount of damages claimed by a party. *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005); Fed. R. Civ. P. 8(b)(6). Parties are not entitled to

an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Tozer v. Charles A. Krause Milling Co*., 189 F.2d 242, 244 (3d Cir. 1951).

A motion for default judgment must contain evidence, by affidavits and/or documents, of the following: "(1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the Soldiers' and Sailors' Civil Relief Act." *Idewu v. Sealey*, 2012 U.S. Dist. LEXIS 36783, at *6 (D.V.I. Mar. 19, 2012); *Int'l Union of Painters and Allied Trades Dist. Council 711 Health & Welfare, Vacation & Finishing Trades Inst. Funds v. Village Glass, Inc.,* 2012 WL 209076, at *1 (D.N.J. Jan. 3, 2012); *see also* Fed. R. Civ. P. 55(b); *Island Yacht Charters, Inc. v. Malgaglio,* 2009 WL 1507406, at *1 (D.V.I. May 28, 2009); *Turk v. Invacare Corp.*, 2010 WL 4740196, at *3 (W.D. Pa. Nov. 16, 2010). Additionally, the Court must assess three factors when determining whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

### III.    ANALYSIS

#### A. Default Judgment Factors

The Bank has properly shown that: (1) default was entered against the Abdallahs by the Clerk of Court (Dkt. No. 35); (2) the Abdallahs have not appeared; (3) the Abdallahs are neither infants nor incompetent (Dkt. No. 58-1 at 2); (4) the Abdallahs were validly served with process (Dkt. Nos. 17-18); and (5) the Abdallahs are not in the military (Dkt. No. 57). Once again,

however, the impediment to awarding the Bank a default judgment against the Abdallahs is its failure to properly support its damages figures.

### B. Damages

One of the issues that continues to persist in determining the amount of damages owed by the Abdallahs is whether the various provisions of the Note and Mortgage relied upon by the Bank permit the Bank to incorporate the add-on charge and add-on interest (totaling $36,893.19, as set forth in Mr. Brown's Affidavit, Dkt. No. 65-3) into the principal amount due.[2] The sentence upon which the Bank relies in the Note and paragraph 18 of the Mortgage permit the Bank to recover reasonable attorney's fees and costs expended in this litigation. However neither of those provisions state that those sums may be added to the principal owed. (Dkt. Nos. 65-1, 65-2 at ¶ 18). Similarly, the sentence from page one of the Mortgage, upon which the Bank also relies, simply permits the Bank to charge interest on the attorney's fees due; it does not provide for adding that interest into the principal. (Dkt. No. 65-2 at 1). Finally, paragraph 20 of the Mortgage applies only upon a request by the Borrower (the Abdallahs) for a future advance— which did not occur here. In any event, paragraph 20 does not address the adding of attorney's fees and costs, or the interest thereon, to the principal. (Dkt. No. 65-2 at ¶ 20).

Having considered the plain language of the provisions to which the Bank has directed the Court's attention in support of its position, the Court finds that the Note and Mortgage do not permit the Bank to include the add-on charge and add-on interest to the principal due on the loan. *See Cannonier v. Turner Int'l, L.L.C.,* 2010 WL 697351, at \*2 (D.V.I. Feb. 25, 2010) (stating established rule in contract interpretation that "[c]ourt should look only to the plain language of

---

[2] At the September 11, 2012 hearing, the Bank's counsel stated that the add-on charge consists of attorney's fees and costs, except for a $120.00 appraisal fee.

the contract between the parties.") (quoting *B.A. Props., Inc. v. Aetna Cas. & Sur. Co.*, 221 F. Supp. 2d 592, 596 (D.V.I. 2002)). Accordingly, the amount of damages sought by the Bank must be recalculated to exclude the add-on charge and add-on interest from the principal, and to correct any other component of the damages figure that the inclusion of those amounts in the principal has affected.[3]

The Court will therefore deny the Renewed Motion without prejudice and will allow the Bank to re-file its motion for default judgment against the Abdallahs. In the re-filed submission, the Bank must substantiate how it arrived at each component figure of damages, as well as the final damages amount. *See Blythe v. Marauder Corp.*, 2010 WL 3609789, at *2 (D.N.J. Sept. 16, 2010) (denying motion for default judgment without prejudice in part because "the motion for default judgment fails to adequately detail the basis for the calculation of damages sought."). In addition, the Bank shall bring all amounts due current as of the date of filing.

### C. Attorney's Fees and Costs

Under both the terms of the Note and Mortgage, the Bank may recover "reasonable" attorney's fees. (Note, Dkt. No. 65-1; Mortgage, Dkt. No. 65-2, ¶ 18). In addition to improperly including the add-on charge and add-on interest as principal, the damages sought by the Bank raise another concern: whether the $38,282.81 in attorney's fees and costs is reasonable.

Because this case is in federal court on diversity jurisdiction, Virgin Islands law on assessing the reasonableness of attorney's fees applies. *See Pierce Assocs., Inc. v. Nemours Found.*, 865 F.2d 530, 542 (3d Cir. 1988) ("[I]n a diversity case[,] state law ordinarily governs

---

[3] The Bank has explained that the varying per diem rates over the years were "a direct function of total principal balance; any increase in the principal balance[] necessarily produces a resultant increase in the per diem interest due." (Dkt. No. 65 at 3). Thus, appropriate changes in the per diem interest rate and the amount of interest owed must be made.

the award of attorneys' fees."). The Virgin Islands Code provides for attorney's fees to be awarded to the prevailing party in "such sums as the court in its discretion may fix" as compensation for the party's attorneys in maintaining or defending the action. 5 V.I.C. § 541(b). "To determine a fair and reasonable award of attorneys' fees, the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples v. Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases).

For example, the Court considers whether the issues in a case are novel and complex, or relatively commonplace. *See Firstbank P.R. v. Connor,* 2009 WL 2515729, at *2 (D.V.I. Aug. 11, 2009); *see also Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir. 1973). When a matter "involve[s] run-of-the-mill debt and foreclosure claims, and [is] disposed of at the summary judgment stage," the Court, in its discretion, may reduce the award of attorney's fees accordingly. *Firstbank P.R. v. Caribbean Island Adventure, Inc.*, 2008 WL 783537 at *2 (D.V.I. Mar. 20, 2008). The Court may also refuse to reimburse a party for particular billing entries that reflect work "that was billed excessively or repeatedly." *Id.* (citing *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 422 (3d Cir. 1993)).

In accordance with these principles, the Court undertakes a two-step inquiry when examining the reasonableness of attorney's fees. First, the Court determines whether the hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Berne Corp. v. Gov't of Virgin Islands*, 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). Second, the Court determines whether the hourly rate sought is reasonable, in comparison to prevailing market rates in the relevant community "for similar services by lawyers

of reasonably comparable skill, experience, and reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *Berne Corp.*, 2012 WL 369535 at *10.

The Bank has submitted a Memorandum of Costs and an affidavit from the Bank's counsel that identifies who worked on this matter and their billing rates. (Dkt. No. 73-2). Attorney Duensing's rate was $200 per hour; Sandra LaPlace's billing rate was "$175/185" per hour; Georgina Nicholas's billing rate was "$125/135" per hour; and Brenda Gibs performed a foreclosure search for a flat fee of $175. *Id.* Attached to the Affidavit is a thirteen-page billing memorandum which has columns for the date work was performed, by whom, a brief description of the work performed, the time spent and hourly rate, and the total dollar amount billed.

Assessing first the reasonableness of the hourly rates, Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (citing cases). The Court therefore concludes that the hourly rates charged here are reasonable and fall within the scope of rates for such services. *See Rode*, 892 F.2d at 1183.

Notwithstanding the reasonableness of the hourly rates, the Court finds that the total amount of attorney's fees sought for this matter is excessive.[4] This matter involves "run-of-the-

---

[4] Attorney's fees awards in foreclosure cases in this District have been significantly lower than the $36,319.00 requested by Plaintiff. *See Flagstar Bank, FSB v. Pemberton ex rel. Pemberton*, 2010 WL 2643378, at *2 (D.V.I. June 30, 2010) ("Moreover, having already awarded over $5,000 in attorney's fees and costs to Plaintiff in this unopposed foreclosure matter, the Court finds that an additional $1,233.67 would not be reasonable."); *FirstBank P.R. v. Connor*, 2009 WL 2515729 at *2 (D.V.I. Aug. 11, 2009) (awarding only $1,000 of $6,490.50 attorney's fee request because "this matter involved garden-variety debt and foreclosure claims and was disposed of at the default judgment stage."); *Banco Popular de P.R. v. Carew*, 2009 WL 2413675, at *2 (D.V.I. Aug. 3, 2009) (awarding only $1,000 of $3,506.30 attorney's fee request

mill debt and foreclosure claims, and was disposed of at the summary judgment [and default judgment] stage. The issues were not novel, but, rather, relatively commonplace." *Caribbean Island Adventure, Inc.*, 2008 WL 783537, at *2. In fact, the Complaint was only four pages and did not raise any novel legal or factual issues; the requests for entry of default were just over one page each, accompanied by a one-page affidavit and short draft order; and the memorandum in support of the motion for summary and default judgment was five pages, the statement of undisputed facts was just over three pages, and the reply was four pages. While the Court recognizes that Defendants Valerie and Alfred Hankins initially resisted the Bank's efforts to foreclose on the Property, such resistance cannot account for the large disparity in attorney's fees between this and other default judgment foreclosure cases in this District.

A significant shortcoming in the Memorandum of Costs submitted by the Bank is that the amount of time that counsel spent on a discrete task cannot be determined, because multiple tasks are often lumped together in one entry. For example, the October 21, 2010 entry provides: "Continue work on summons and complaint, notice of lis pendens; follow up on service on IRS and other lien holders. Follow up with corporations regarding registered agent for lien holder; research business association of foreign judgment and current status of recorded contract of sale," for a total of 2.9 hours. (Dkt. No. 73-3 at 1). The February 21, 2011 entry provides: "Work on request for entry of default with supporting order and attorney's affidavit on Abdallah, Pivar and Peabody defendants; work on draft motion for summary and default judgment," for a total of 2.5 hours (Dkt. No. 73-3 at 3). The October 21, 2010 entry contains five different tasks and the February 21, 2011 entry contains two different tasks. It is impossible to ascertain from these

---

for "run-of-the-mill debt and foreclosure claims [that] was disposed of at the default judgment stage, obviously without opposition from either of the Defendants.").

entries how much time the attorney spent on October 21, 2010 working on the summons and complaint out of the 2.9 hours billed, or how much time the attorney spent working on the motion for summary judgment on February 21, 2011. As a consequence, when the Court attempted to determine how much time the attorneys spent on discrete tasks, such as drafting the complaint, drafting the motion for summary judgment and default judgment, or finalizing the entry of default, in order to establish whether that time was reasonable, it did not have the raw data to do so.

By utilizing this method of recording time entries, the Bank's counsel failed to meet his burden of showing that the attorney's fees sought were reasonable. *See Lewis v. Mazda Motor of Am., Inc.,* 2012 WL 6634134, at *3 (D.V.I. Dec. 20, 2012) (explaining that "[t]he party seeking the attorney's fees has the burden to prove that the requested attorney's fees are reasonable, which initially requires the fee petitioner to submit evidence supporting the hours worked and the rates claimed") (citations omitted); *Charley v. STX Rx, Inc.,* 2011 WL 4025438, at *5 (D.V.I. Sept. 8, 2011) ("If a block entry [containing numerous tasks] is confusing or makes it difficult to allocate reasonable time to a specific task, the blame lies on the party seeking fees because they were in the best position to mitigate any confusion."); *Morcher v. Nash*, 32 F. Supp. 2d 239, 242 (D.V.I. 1998) (declining to award attorney's fees under section 541(b) for billing "entries" that "are so vague as to prevent meaningful judicial review."); *Good Timez, Inc. v. Phoenix Fire & Marine Ins. Co., Ltd.,* 754 F. Supp. 459, 463 n.6 (D.V.I. 1991) (criticizing overly general itemization that contained "many entries in which two or more different kinds of legal work were lumped together," and reducing attorney's fees).

At the hearing on this matter, the Bank's counsel explained that the admittedly high attorney's fees resulted from the fact that there was an "underlying litigation" involving the

fraudulent conveyance of the Property. However, the entries in the Memorandum of Costs make no mention of such litigation or fraudulent conveyance issues. It would thus appear that time spent on fraudulent conveyance matters was incorporated into the entries related to the foreclosure and debt causes of action. Because the fraudulent conveyance work cannot be identified from the time entries, the Court cannot assess what that work entailed, whether it should have been included in the Memorandum of Costs and, if so, whether the charges were reasonable.

In addition, all of the entries in the Memorandum of Costs subsequent to the Court's March 30, 2012 Memorandum Opinion granting the Bank's Motion for Summary Judgment and denying without prejudice the initial Motion for Default Judgment relate to the efforts by the Bank's counsel to properly support its damages claim in a second attempt to obtain default judgment against the Abdallahs. The Renewed Motion was also deficient, requiring the Court to schedule a hearing on the matter, and requiring additional submissions. In the Court's view, it is not reasonable to require the Abdallahs to underwrite the Bank's deficiencies in its initial Motion for Default Judgment which has resulted in additional legal work. Accordingly, the Court will disallow the $5,295.50 expended in attorney's fees after March 30, 2012, as these are charges the Bank brought upon itself by not adequately supporting its damages claim in the first instance.

Finally, in terms of costs allowed under 5 V.I.C. § 541, it is well-established that "photocopying and other reproduction costs are nonreimbursable." *Lempert v. Singer*, 1993 WL 661181, at * (D.V.I. 1993) (citing *Bedford v. Pueblo Supermarkets of St. Thomas, Inc.*, 18 V.I. 275, 278 (Terr. Ct. 1981) (office expenses, such as photocopying and telephone calls are not reimbursable)); *Good Timez,* 754 F. Supp. at 464 (charges for photocopying and telephone calls have been "repeatedly held as not reimbursable under section 541"). Thus, the Court will strike

the numerous entries for photocopies and long-distance telephone calls included in the Memorandum of Costs. Fees related to service of process, notice of lis pendens, the filing fee for the federal court action, the recording fee, and the title search will be allowed.[5] *See, e.g.*, *Equivest St. Thomas, Inc. v. Gov't of Virgin Islands*, 46 V.I. 447, 2004 WL 3037953 at *9–*10 (D.V.I. Dec. 31, 2004) (finding filing fees, process service fees, transcript purchase fees, witness fees, and travel expenses to be "reasonable expenses which are normally charged paying clients," and noting that it is "well settled" that 5 V.I.C. § 541 gives the Court discretion to award fees and costs to prevailing parties).

In view of the foregoing, the Court concludes that only some of the $36,319.00 in attorney's fees and $1,963.81 in costs claimed by the Bank are reasonable. The Court will therefore reduce the attorney's fees award in two steps. First, based on the discussion above, it will subtract from the $36,319.00 total the $5,295.50 in fees that represents billing from April 2, 2012 forward, leaving $31,023.50. Second, it will reduce that sum by seventy-five percent, from $31,023.50 to $7,755.88.[6] The Court will reduce the costs sought from $1,963.81 to $1,290.00. Accordingly, attorney's fees and costs will be awarded in the amount of $9,045.88. *See Lucerne Inv. Co. v. Estate Belvedere, Inc.*, 411 F.2d 1205 (3d Cir. 1969) (allowing 7.5% of requested

---

[5] The Court will not award costs for an October 2010 filing fee for an unexplained complaint, filed prior to the instant Complaint. Nor will the Court award costs for counsel to attend the September 2012 hearing, as those costs could have been obviated if counsel had adequately supported the damages claim in the first instance.

[6] The amount of attorney's fees in this run-of-the-mill case is still on the higher side of such fees awarded in summary judgment and default judgment debt and foreclosure cases in this District. This figure takes into account the fact that the Hankins initially opposed the Bank's motion for summary judgment, which required additional litigation on the part of the Bank. The attorney's fees total also takes into account the fact that the Bank started preparing for trial prior to its cancellation. (Dkt. No. 61). Nevertheless, in this case where the Abdallahs had defaulted, and the three remaining Defendants had stipulated to the Bank's first priority lien (Dkt. No. 55), the preparation for trial should have been minimal.

attorney's fees in mortgage foreclosure case); *Caribbean Island Adventure*, 2008 WL 783537, at *2 (allowing 6%, or $1,034.26 of $16,861.16 in requested attorney's fees and costs in debt and foreclosure case); *Ruyter Bay Land Partners,* 2008 WL 413308, at *2 (allowing 21%, or $2,000, of the $9,511 in requested attorney's fees and costs).

## IV.    CONCLUSION

The Bank has once again failed to properly support the damages requested in its Renewed Motion for Default Judgment. Accordingly, the Bank's Renewed Motion is denied without prejudice. The Court will award attorney's fees and costs in the amount of $9,045.88.

An appropriate Order accompanies this Memorandum Opinion.

Date: May 2, 2013                                   _____/s/_____
                                                                 WILMA A. LEWIS
                                                                 District Judge