**DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | |
|---|---|
| **THE BANK OF NOVA SCOTIA,** )<br>)<br>  **Plaintiff,** )<br>  **v.** )<br>)<br>**NAJI ABDALLAH a/k/a NAJI A. ABDALLAH** )<br>**a/k/a NAJEH ABDALLAH, ISSA ABDALLAH** )<br>**a/k/a ISSA A. ABDALLAH,** )<br>**DEPARTMENT OF TREASURY-INTERNAL** )<br>**REVENUE SERVICE,** )<br>**VALERIE SHEPPARD HANKINS AND** )<br>**ALFRED F. HANKINS, JR.,** )<br>  )<br>  **Defendants,** )<br>  )<br>**VALERIE SHEPPARD HANKINS and** )<br>**ALFRED HANKINS,** )<br>  )<br>  **Cross-Claimants,** )<br>  )<br>  **v.** )<br>  )<br>**NAJI ABDALLAH a/k/a NAJI A. ABDALLAH,** )<br>  )<br>  **Defendant.** )<br>_____) | **Civil Action No. 2010-102** |

**Attorneys:
Matthew J. Duensing, Esq.,**
St. Thomas, U.S.V.I.
  *For Plaintiff Bank of Nova Scotia*

**Angela Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
  *For Defendant Internal Revenue Service*

**Lydia L. Moolenaar, Esq.,
Yohana M. Manning, Esq.,**
St. Croix, U.S.V.I.
  *For Defendants and Cross-Claimants
  Valerie Sheppard Hankins and Alfred Hankins*

**MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Plaintiff Bank of Nova Scotia's "Clarification to the Factual Record," filed on May 29, 2013 in this debt and foreclosure action against Defendants Naji Abdallah and Issa Abdallah ("the Abdallahs"). (Dkt. No. 79). By this "Clarification," the Bank of Nova Scotia (the "Bank") has responded to the Court's Order dated May 2, 2013 which denied without prejudice the Bank's "Renewed Motion for Default Judgment and to Clarify and Correct the Factual Record," and directed it to "file supplemental affidavit(s) that must describe, with particularity, the manner in which all of the component damages figures are calculated, and must bring all amounts current as of the date of filing." (Dkt. No. 76 at 2). The Court will construe the Bank's Clarification to the Factual Record as a renewed Motion for Default Judgment against the Abdallahs. For the reasons discussed below, the Court will grant in part and deny in part the Bank's Motion.

I.  **BACKGROUND**

On November 2, 2010, the Bank filed a Complaint against the Abdallahs, the Internal Revenue Service ("IRS"), Valerie Sheppard Hankins, Alfred F. Hankins, Jr., Peabody Place Centre GRP, and Pivar Real Estate.[1] (Dkt. No. 1). The Complaint alleged that the Abdallahs breached a September 2, 1993 Note and Mortgage regarding property ("the Property") described as:

> Plot 24 of Parcel 3 Estate Orange Grove
> Company Quarter
> St. Croix, Virgin Islands
> Consisting of 0.296 U.S. Acre, more or less,

---

[1] The Bank of Nova Scotia voluntarily dismissed Peabody Place Centre GRP and Pivar Real Estate on September 27, 2011, and October 27, 2011, respectively. (*See* Dkt. Nos. 48 and 49).

2

> As more fully shown and described on Public Works
> Department Drawing No. 1178 dated January, 1962

*Id.* The Complaint further alleged that Defendant Naji Abdallah signed the Note; that both Issa and Naji Abdallah signed the Mortgage; that Naji Abdallah failed to pay on the Note; and that the Abdallahs had defaulted on the Mortgage. *Id.* at ¶¶ 9-12; *see also* Dkt. Nos. 41-2 & 41-3. The Bank sought foreclosure of the Property and damages from the Abdallahs, dating from October 21, 2010. *Id.* at ¶¶ 13-14. Although they were served with the Summons and Complaint, the Abdallahs did not answer the Complaint or otherwise appear in this action. On April 14, 2011, the Bank filed a "Request for Entry of Default" against the Abdallahs; the Clerk of the Court entered default against them on the same day. (Dkt. Nos. 30, 35).

On June 14, 2011, the Bank filed a Motion for Default and Summary Judgment, seeking: (1) a default judgment on the debt and foreclosure causes of action against Naji Abdallah for the entire amount due under the Note and Mortgage, plus expenses, interest, and attorney's fees; (2) default judgment on the foreclosure cause of action against Issa Abdallah; and (3) summary judgment against the IRS and the Hankins as junior lienholders. (Dkt. No. 40). On November 18, 2011, the Bank, the IRS, and the Hankins filed a "Stipulation as to the First Priority Status of the Mortgage of Bank of Nova Scotia and the Relative Priority of the Junior Lien Defendants," wherein they stipulated that the Bank had a first priority lien on the Property, the IRS had a second priority lien, and the Hankins had a third priority lien. (Dkt. No. 55).

In its March 30, 2012 Memorandum Opinion, the Court awarded the Bank summary judgment against the IRS and the Hankins, establishing the priority of the liens. (Dkt. No. 63 at 5). The Court denied, without prejudice, the Bank's Motion for Default Judgment against the Abdallahs, finding that the Bank's submissions in support of the amount of damages due was

deficient because the figures offered were inconsistent. The Court pointed out that the Complaint set forth that $78,597.55 represented "the entire unpaid principal sum *with* all accrued interest and late charges due and payable" as of October 21, 2010, and that interest accrued "at the rate of $12.55 per diem until the date of judgment." (Dkt. No. 1 at ¶ 13) (emphasis added). However, in its Statement of Undisputed Material Facts in support of Default and Summary Judgment, the Bank stated that, as of May 23, 2011, "[t]he entire unpaid principal sum with all accrued interest and late charges due and payable is . . . $96,838.45 . . . comprised of $77,990.89 in principal, $17,869.44 in interest, and $978.12 in late fees with interest continuing to accrue thereafter at the rate of $14.65 per diem." (Dkt. No. 41 at ¶ 10). The Bank had also provided the Affidavit of Daniel Rogers, a Virgin Islands Bank Manager, who stated that "Defendant Naji Abdallah . . . is indebted to the Bank in the total amount of $83,119.76 as of May 27, 2011, comprised of $77,990.89 in principal, $4,150.75 in interest, and $978.12 in late fees, with interest continuing to accrue thereafter at the rate of $11.25 per diem." (Dkt. No. 41-4 at ¶ 6) (emphasis in original). The Court cited the inconsistencies in the amount of damages set forth in the Rogers Affidavit, the Statement of Undisputed Facts, and the Complaint, and expressed concern that the Bank had provided no explanation of why its damages calculations differed so significantly from one another. (Dkt. No. 63 at 6-7).

On December 5, 2011, the Bank provided a "Supplemental Affidavit of Hugh Brown" in support of its Motion for Default Judgment. This Affidavit provided yet another set of damages figures. Mr. Brown, a Bank Manager, stated that, as of December 5, 2011, "Defendant Naji Abdallah is indebted to the Bank in the total amount of $111,435.89 . . . comprised of $77,990.89 in principal, $6,039.61 in interest, *$25,599.65 in add-on charge[s], $827.62 in add-on interest,* and $978.12 in late fees, with interest continuing to accrue thereafter at the rate of *$16.54 per*

4

*diem.*" (Dkt. No. 58-1 at ¶ 6) (emphasis added). Mr. Brown did not explain what categories of fees were included in the $25,599.65 in "add-on charge[s]" and why the Bank was entitled to those charges and interest on those charges; and why the *per diem* interest rate differed from the three other *per diem* rates. Because the Bank's damage calculations were "confusing, inconsistent, and unsupported by record evidence," the Court ruled that the Bank had "failed to adequately support its damages request" and denied the Motion for Default Judgment against the Abdallahs without prejudice. (Dkt. No. 63 at 7). The Court permitted the Bank to "amend its Complaint and/or refile the motion with additional evidence addressing the damages issues," describing "with particularity, the specific damages sought, the manner in which such damages are calculated, and the legal and factual grounds for those damages," together with supporting evidence. *Id.* at 8, 9.

On May 9, 2012, the Bank filed a "Renewed Motion for Default Judgment and to Clarify and Correct Factual Record" (the "Renewed Motion"). (Dkt. No. 65). The Bank explained that the "add-on" charges included "property appraisal valuation and legal costs expended by Plaintiff," and that, "[u]nder the express terms of the mortgage these amounts become additional principal due on the loan." (Dkt. No. 65 at 3). The Bank also stated that the varying per diem interest rates were "a direct function of total principal balance; any increase in the principal balance[] necessarily produces a resultant increase in the per diem interest due." *Id.*

Attached to the Renewed Motion was another affidavit by Mr. Brown regarding the amounts due. (Dkt. No. 65-3). Mr. Brown stated that the Abdallahs were indebted to the Bank in the total amount of $123,526.58 as of May 8, 2012. *Id.* This figure was comprised of $77,990.89 in principal; $7,664.38 in interest; $35,251.15 in add-on charges; $1,642.04 in add-on interest; and $978.12 in late fees, with interest accruing at $18.08 per diem. *Id.* An e-mail from Karen

Lall, Special Recoveries Adjustor at the Bank, to Sandra Laplace (whose position was unidentified), which contained information on the Abdallah account, supported the damages figures that Mr. Brown cited in his affidavit, but did not provide any information concerning what comprised the add-on charges or why add-on interest was permitted. (Dkt. No. 65-4).

The Court set a hearing on the Renewed Motion, directing the Bank's counsel to substantiate and discuss: (1) the damages sought in the Renewed Motion, particularly the $35,251.15 in add-on charges, $1,642.04 in add-on interest, and the $18.08 per diem charge; and (2) how, under the express terms of the Mortgage, those amounts become additional principal due on the loan. (Dkt. No. 67). At the September 11, 2012 hearing, the Bank's counsel, Matthew J. Duensing, Esq., submitted to the Court, for the first time, a loan history and loan payout information on the Abdallah account, as well as a Memorandum of Costs from his law firm that updated the amount of attorney's fees ($36,319.00) and costs ($1,963.81) sought in this matter. These documents were later filed with the Court. (Dkt. Nos. 71, 73). In response to the Court's query concerning how the add-on charges and add-on interest became additional principal due under the loan, the Bank's counsel explained that the Note and Mortgage contained language that permitted the Bank to include those charges in the principal, pointing to various provisions in the Note and Mortgage for support. (Dkt. Nos. 65-1, 65-2).

In its Memorandum Opinion filed May 2, 2013, the Court found that the Note and Mortgage did not permit the Bank to include the add-on charges and add-on interest to the principal due on the loan. (Dkt. No. 75 at 9-10). The Court denied the Renewed Motion without prejudice and allowed the Bank to re-file its motion for default judgment against the Abdallahs. It required the Bank to recalculate the amount of damages "to exclude the add-on charge[s] and add-on interest from the principal, and to correct any other component of the damages figure that

the inclusion of those amounts in the principal has affected." *Id.* at 10. The Memorandum Opinion directed the Bank to substantiate how it arrived at each component figure of damages, as well as the final damages amount, and to bring all amounts due current as of the date of filing. *Id.* Finally, the Court addressed the Bank's request for $38,282.61 in attorney's fees and costs. Finding that many of the fees and costs were excessive and not reasonable, the Court awarded $9,045.88 in fees and costs. *Id.* at 17.

In the "Clarification to Factual Record," filed in response to the May 2, 2013 Memorandum Opinion—which the Court construes as a renewed Motion for Default Judgment against the Abdallahs—the Bank attempts, once again, to explain the discrepancies in the damages figures that have plagued its effort to obtain a default judgment in this case. It asserts that the $17,869.44 in interest due and owing as of May 23, 2011, contained in its Statement of Undisputed Material Facts in Support of Summary Judgment, was "an inadvertent typographical error" and that the interest figure should have been $3,867.66; however, the inclusion of the typographical error "did not affect the overall payout." (Dkt. No. 79 at 2). The Bank also urged the Court to "disregard" the information contained in the June 9, 2011 affidavit of Bank Manager Daniel Rogers because he is "no longer employed by Scotiabank and therefore the information he provided on the affidavit could not be presently verified." *Id.* [2]

The Bank went on to explain that "add-on charges" generally consist of "legal fees, costs, property valuation and force placed insurance (when necessary)," and that "[a]dd-on interest is simply interest acc[ru]ing on add-on charges, but not mortgage loan principal." *Id.* In his third

---

[2] The Court feels compelled to note that these "Clarification[s] to [the] Factual Record" are of great concern. An "inadvertent typographical error" that accounts for a change in numbers from $17,869.44 to $3,867.66 is, on its face, inexplicable, and was not explained by the Bank. Further, the notion that information should be "disregard[ed]" because it is dependent on verification by a particular individual rather than by objectively verifiable documentation, is extremely troubling.

affidavit submitted in this case, Mr. Brown explained that the September 1993 Mortgage, with interest accruing at 9.25% per annum, was renewed in June 2005 with interest at 5.75% per annum. (Dkt. No. 79-5 at ¶ 6). He also explained, with precision, how the late charges were assessed. *Id.*

With regard to Mr. Abdallah's indebtedness to the Bank, as of May 13, 2013, Mr. Brown stated that the total indebtedness was $136,061.42,

> comprised of $77,990.89 in principal, $11,145.85 in interest on principal, $41,991.15 in add-on charges, $3,955.41 in add-on interest, and $978.12 in late fees, with interest continuing to accrue thereafter at the rate of $8.77 per diem. . . The add-on charges referenced above include the $9,045.88 in legal fees and costs previously awarded by the Court.

(Dkt. No. 79-5 at ¶ 7). Mr. Brown further stated in his affidavit that "[a]dd on charges and add-on interest have never been calculated upon the loan principal, but rather add-on charges and add-on interest have been calculated separately." *Id.* ¶ 8. He also stated that the interest "on add-on charges was separately calculated at the annual interest rate of 5.75% . . . ." *Id.* at ¶ 6.[3] With these clarifications, the Bank requests that the Court award default judgment for debt against Naji Abdallah in the amount of $127,015.54 (the $136,061.42 figure less the $9,045.88 in legal fees previously awarded), plus interest that continues to accrue until the judgment is fully satisfied, and default judgment for foreclosure against Naji and Issa Abdallah. (Dkt. No. 79 at 3).

Because the Court had also requested an accounting that excluded from the principal balance the add-on charges and add-on interest, Mr. Brown provided an accounting that did not include the add-on charges and add-on interest in the payout. In that regard, he averred that "the

---

[3] These statements are at odds with the Bank's position taken during the September 11, 2012 hearing in which the Bank's counsel argued that various provisions of the Note and Mortgage permitted the Bank to incorporate those charges into the principal—not that they were separately calculated and simply added to the principal.

Defendant is indebted to the Bank in the total amount of $90,114.86 as of May 13, 2013, comprised of $77,990.89 in principal, $11,145.85 in interest on principal, and $978.12 in late fees, with interest continuing to accrue thereafter at the rate of $8.77 per diem." *Id.* at ¶ 8. Mr. Brown indicated that the per diem amount was "calculated only on actual loan principal," and that the add-on charges, interest on the add-on charges, and late fees were not included in the per diem interest figure. *Id.*

On June 24, 2013, the Court ordered the Bank to clarify "the date from which interest on the principal loan began to accrue, and the amount of add-on interest based solely on the $9,045.88 in legal fees and costs awarded by the Court, including the date that the interest on those legal fees and costs began to accrue and the reason why that date applies. The affidavit should also specify the per diem rate on the add-on interest." (Dkt. No. 80). After two extensions, the Bank filed its affidavit on July 19, 2013 in which Mr. Brown indicated that the dates from which interest on the principal loan began to accrue were September 2, 1993 and June 24, 2005 for the original and renewed loans, respectively. (Dkt. No. 85-1). He also averred that the Bank did not charge interest on legal fees and costs, and that "[a]dd-on charges, *including* force placed insurance and valuation of the property and *excluding* legal fees and costs are charged at the interest rate of 5.75% per annum, with a current per diem of $8.77[.]" *Id.*

## II.   ANALYSIS

A motion for default judgment must contain evidence, by affidavits and/or documents, of the following: "(1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an affidavit of non-military service in compliance

9

with the Soldiers' and Sailors' Civil Relief Act." *Idewu v. Sealey*, 2012 U.S. Dist. LEXIS 36783, at *6 (D.V.I. Mar. 19, 2012). Additionally, the Court must assess three factors when determining whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). The Bank has properly shown that: (1) default was entered against the Abdallahs by the Clerk of Court (Dkt. No. 35); (2) the Abdallahs have not appeared; (3) the Abdallahs are neither infants nor incompetent (Dkt. No. 58-1 at 2); (4) the Abdallahs were validly served with process (Dkt. Nos. 17-18); and (5) the Abdallahs are not in the military (Dkt. No. 57). The only remaining issue has been whether the Bank has properly supported its damages figure—a persistent problem in this case, given the changing figures that the Bank has proffered in affidavits from various Bank officials.

With Mr. Brown's third affidavit, the Bank appears to have settled on the final figures it is seeking in the debt action against Mr. Abdallah. The amount of principal owed, $77,990.89, has been a relatively consistent figure throughout the filings, as has been the $978.12 in late fees. The problem has been the calculation of interest, the per diem amount, the add-on charges, and the add-on interest.

With regard to interest on the principal amount, the Bank has recognized and apparently corrected its "typographical error" of $17,869.44 in interest due as of May 23, 2011 (as it requests $11,145.85 in interest as of May 13, 2013), set forth in its Statement of Undisputed Facts. The Bank now avers, through Mr. Brown, that the per diem interest rate on that principal—calculated *only* on the actual loan principal—is $8.77. (Dkt. No. 79-5, ¶ 8).

Despite all of the supplemental briefing filed by the Bank, it still has not sufficiently described, with particularity, what charges are included in the add-on charges and how they were calculated. In its original Motion for Summary Judgment and Default Judgment, there was no mention of any add-on charges. *See* Dkt. No. 41-4. In Mr. Brown's December 2011 Supplemental Affidavit, he stated that the add-on charges amounted to $25,599.65, but did not otherwise describe what those charges consisted of. (Dkt. No. 58-1, ¶ 6). In its Renewed Motion for Default Judgment and to Clarify and Correct Factual Record, the Bank attached an affidavit from Mr. Brown stating that $35,251.15 in add-on charges and $1,652.04 in add-on interest was owed as of May 8, 2012. (Dkt. No. 65-3, ¶ 6). The only support for that figure was an e-mail from a Bank official concerning the Abdallah account that showed add-on charges and add-on interest, but not explaining what those amounts were or how they were derived. (Dkt. No. 65-4). At the September 2012 hearing, the Bank's attorney stated that the add-on charges consisted of attorney's fees and costs, except for a $120.00 appraisal fee. (Dkt. No. 75 at 9 n.2). In his May 2013 Clarification to Factual Record, Mr. Brown indicated that the $41,991.15 add-on charges, were comprised of "legal fees, valuation, costs." (Dkt. No. 79-5, ¶¶ 6(i)). The only explanation given was that the add-on charges "include the $9,045.88 in legal fees and costs previously awarded by the Court" in its May 2013 Order; the Bank did not otherwise specify what categories of fees were contained in the remaining $32,945.27 in the add-on charges, and the respective amounts. *Id.* ¶ 7. Mr. Brown also stated that $3,955.41 in add-on interest was due and owing as of May 13, 2013. (*Id.*). The Bank's exhibit in support of those fees—an e-mail showing the sum total for the add-on charges and add-on interest in the Abdallah account—does not suffice for the particularity the Court required in order to award these fees. (Dkt. No. 79-5). Accordingly, since the Bank has had numerous opportunities to explain its add-on charges with

11

specificity, and has failed to do so, the Court will not award the add-on charges the Bank seeks as part of its damages claim (other than the previously awarded attorney's fees and costs). Nor will the Court award any add-on interest in relation to the add-on charges.

### III.  CONCLUSION

The Bank has satisfied the requirements necessary for entry of a default judgment against the Abdallahs. The Court finds that the total amount due and owing as damages comprising the debt cause of action as of May 13, 2013 is $90,114.86, consisting of: principal in the amount of $77,990.89; interest in the amount of $11,145.85, which continues to accrue at the rate of $8.77 per diem until entry of judgment; and $978.12 in late fees. The Court has already awarded $9,045.88 in attorney's fees and costs.  (Dkt. No. 75).

The Bank's Clarification to the Factual Record, which the Court construes as a Renewed Motion for Default Judgment against the Abdallahs, will be granted in part and denied in part. (Dkt. No. 79).

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: September 23, 2013             _____/s/_____
                                      WILMA A. LEWIS
                                      Chief Judge